# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN L. ZOPATTI,<br><br>　　　　　　　　　Plaintiff,<br>vs.<br><br>RANCHO DORADO HOMEOWNERS ASSOCATION, et al.,<br><br>　　　　　　　　　Defendants. | CASE NO. 10CV1091 DMS (WVG)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

This matter comes before the Court on Plaintiff's motion for a preliminary injunction enjoining Defendants from spraying or otherwise applying any pesticide, fungicide, fertilizer, or herbicide within a quarter mile radius of Plaintiff's residence. For the following reasons, Plaintiff's motion is denied without prejudice.

## I.
## BACKGROUND

Plaintiff and her husband purchased a home in the Rancho Dorado community in San Marcos, California in May 2001, where they have resided with their two minor children since. (First Amended Complaint ("FAC") ¶ 14.) Plaintiff alleges she suffers from various medical conditions, including Multiple Chemical Sensitivities, Mixed Connective Tissue Disease, Vasculitis, Polymyositis, Scleroderma, Lupus, Rheumatoid Arthritis, Thyroid Disease, and Asthma. (*Id.* at ¶ 15.) Plaintiff further alleges her medical conditions cause her immune system to react to exposure to various

environmental chemicals or pesticides, insecticides, fungicides, fertilizers, and herbicides, making such materials dangerous to her health and potentially life threatening. (*Id.* at ¶¶ 15, 17.) Plaintiff has informed Defendants of her special sensitivity to such materials and requested certain accommodations. (*Id.* at ¶ 18.)

On October 15, 2010, Plaintiff received notice that Defendants Prescott Companies and Rancho Dorado Homeowners Association (herein, "Defendants") planned to apply pesticides to the common areas of the Rancho Dorado community, using a spray method in a majority of the common areas, but using an injection method in the common areas behind Plaintiff's house and those of her two immediate neighbors. (DeLano Decl. Ex. 1.) Plaintiff filed the instant application on October 18, 2010, seeking a temporary restraining order ("TRO") enjoining Defendants from spraying or otherwise applying any pesticide, fungicide, fertilizer, or herbicide within a quarter mile radius of Plaintiff's residence until such time as the matter may be heard on Plaintiff's motion for a preliminary injunction. Plaintiff's motion was accompanied by the Declarations of Everett DeLano, Dan O. Harper, M.D., and Plaintiff Karan Zopatti. (Doc. 39.) On October 19, 2010, Defendants filed a response to Plaintiff's application for a TRO, stating they had "voluntarily postponed commencement of the subject pesticide application to the Rancho Dorado common areas until after the Court's hearing and ruling on plaintiff's motion for preliminary injunction." (Doc. 40.) On October 20, 2010, upon the parties' consent, the Court issued an Order construing Plaintiff's application for a TRO as a motion for a preliminary injunction and setting a briefing schedule. (Doc. 41.) Defendants submitted an opposition, accompanied by the Declarations of Thomas Oxendine and Daniel L. Sudakin, M.D., as well as objections to the Declarations of Dan O. Harper, M.D. and Plaintiff Karan Zopatti. (Doc. 43.) Defendant Lori Chotiner also submitted a separate response, arguing no basis exists for a TRO to issue as to her. (Doc. 42.) Plaintiff submitted a reply, accompanied by the Declaration of Vera S. Byers, M.D., Ph.D, the Second Declarations of Dr. Harper and Plaintiff Karan Zopatti, Objections to the Sudakin and Oxendine Declarations, and Responses to Defendants' Objections to the first Harper and

Zopatti Declarations. (Doc. 45.) Defendants submitted a sur-reply on October 28, 2010. (Doc. 46.)[1] On October 29, 2010, argument was heard on the motion. (Doc. 47.)

## II.
## LEGAL STANDARD

On a motion for a preliminary injunction, a plaintiff has the burden to establish: 1) likelihood of success on the merits; 2) likelihood of irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in his favor; and 4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, ___ U.S. ___, 129 S. Ct. 365, 374 (2008). With respect to the showing a plaintiff must make regarding her chances of success on the merits, the Ninth Circuit applies a sliding scale approach. *See Alliance for Wild Rockies v. Cottrell*, No. 09-35756, 2010 WL 3665149, at *4 (9th Cir. Sept. 22, 2010). Under the sliding scale approach, the elements of the preliminary injunction test are balanced and, where a plaintiff can make a stronger showing of one element, it may offset a weaker showing of another. *Id.*. "Therefore, 'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at *8. Accordingly, it is necessary for a plaintiff to demonstrate each of these four elements for a preliminary injunction to issue.

## III.
## DISCUSSION

The Court begins its analysis by looking at the element of likelihood of irreparable harm. In making a showing of irreparable harm, it is not sufficient for a plaintiff to show that such irreparable harm is possible in the absence of an injunction. Rather, a plaintiff must show that such irreparable harm is in fact likely. *Alliance for Wild Rockies*, 2010 WL 3665149, at *4. Here, Plaintiff claims further exposure to any pesticide, fungicide, fertilizer, or herbicide would injure her health and could potentially even result in death. She further claims that application of the pesticides by the injection

---

[1] In their sur-reply, Defendants argue the Declarations submitted by Plaintiff in reply are untimely. (Doc. 46 at 1.) However, the Court exercises its plenary discretion to consider these Declarations in its determination of Plaintiff's motion for a preliminary injunction.

1  method proposed by Defendants would expose her to the same risk of serious physical injury as would
2  application by spraying because the chemicals would off-gas for months after the application.  In
3  support of these claims, Plaintiff submits the Declaration of Dan O. Harper, M.D.  Dr. Harper is
4  Plaintiff's treating physician and declares that Plaintiff suffers from "chemical and environmental
5  sensitivities, known as Mixed Connective Tissue Disease ("MCTD"), including the conditions known
6  as Vasculitis; Polymyositis ("PM"); Scleroderma; Lupus (SLE); Rheumatoid Arthritis (RA); Thyroid
7  Disease; Asthma, and Multiple Chemical Sensitivities ("MCS").  MCS is a chronic condition marked
8  by heightened sensitivity to multiple different chemicals and other irritants at or below previously
9  tolerated levels of exposure."  (Harper Decl. ¶ 4.)  Dr. Harper further declares Plaintiff's medical
10 condition is such that exposure to any pesticides or related toxic chemical materials is dangerous to
11 her health and potentially life threatening (*id.* at ¶¶ 5-7), and that avoidance is the only option that will
12 ensure Plaintiff's health (*id.* at ¶ 13).

13        According to the Declaration of Vera S. Byers, it is her opinion, upon reviewing the medical
14 records submitted with the Plaintiff's Second Declaration, "that, more likely than not, Karan L. Zopatti
15 will suffer serious worsening of her mixed connective disease which may well result in her death if
16 she is exposed to Bifenthrin and Imidacloprid."  (Byers Decl. ¶ 10.)  Dr. Byers further declares
17 "[i]nsecticide use has been associated with development of autoimmune diseases in men, since they
18 are the population most usually associated with the spraying.  However, several recent articles have
19 also reported that these diseases are seen in women also [sic].  While these papers deal with the
20 development of the disease, anything that can cause a disease can also worsen it."  (*Id.* at ¶ 13
21 (citations omitted).)

22        Defendants challenge Plaintiff's claim that her condition is such that exposure to the pesticides
23 Defendants propose to apply in the manner they propose to apply them would in fact cause injury to
24 Plaintiff.  They further argue they have committed to use a reputable Pest Control Company licensed
25 by the California State Pest Control Board, which will apply EPA-approved products in accordance
26 with the EPA label instructions for each product.  In support of their arguments, Defendants submit
27 the Declaration of Daniel Sudakin, an M.D. toxicologist with specialized expertise in pesticides.
28 According to Dr. Sudakin's declaration, the application of pesticides according to EPA-approved label

1  instructions poses no risk to the public at large or to Plaintiff. (Sudakin Decl. ¶¶ 12, 19, 44.) Dr.
2  Sudakin further declares that, when applied via the injection method, there is no risk of off-gassing
3  of the Alectus pesticide. (*Id.* at ¶ 34.)

4  Although both Dr. Byers and Dr. Harper declare that exposure to the pesticides at issue will
5  cause Plaintiff irreparable harm, their Declarations and the documents submitted with them as exhibits
6  do not sufficiently show a causal relationship between such exposure, in whatever amounts, and a
7  potential worsening of Plaintiff's medical condition. Neither Declaration provides any support for why
8  the requested quarter mile radius in which Defendants are to be enjoined from applying pesticides or
9  other chemicals is necessary. In fact, Dr. Byers states she has "no opinion as to the width of the area
10 that would need to be considered a 'safe zone' for either spraying or injecting, having not seen the area
11 or researched the further volatility of the chemicals." (Byers Decl. at ¶ 13.) Additionally, neither
12 Declaration provides any evidence as to the claims that the proposed application of the pesticides via
13 the injection method will lead to off-gassing and an equal level of exposure for Plaintiff as would
14 application via the spraying method. Furthermore, although Plaintiff's second declaration states she
15 has been treated by numerous doctors and specialists for her various medical conditions since 1989
16 and attaches multiple medical records, these records do not indicate any causal link between her
17 condition, or the worsening of her condition, and exposure to pesticides, fungicides, or fertilizers.
18 (Second Zoppati Decl. ¶ 3, Exs. 1-6.)

19 Based on all of the evidence submitted, the Court finds, although Plaintiff has demonstrated
20 the possibility of irreparable harm in the absence of preliminary relief, she has failed to carry her
21 burden of establishing that such irreparable harm is in fact likely. Because the Court finds Plaintiff
22 has failed to establish a likelihood of irreparable harm, it does not address the remaining three
23 elements.

## IV.

## CONCLUSION

26 For the reasons set forth above, Plaintiff's motion for a preliminary injunction is denied
27 without prejudice. Should Plaintiff obtain sufficient evidence to carry her burden on a motion for a
28 preliminary injunction in the future, she is invited to submit a motion at such time. Finally, the Court


notes with approval the partial accommodation proffered by Defendants with respect to application of pesticides via the injection method in the common area located behind Plaintiff's home and the homes of her two immediate neighbors and encourages the parties to reach a mutual resolution of the matters at issue in this case.

**IT IS SO ORDERED.**

DATED: November 1, 2010

_____
HON. DANA M. SABRAW
United States District Judge