UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN L. ZOPATTI,<br><br>　　　　　　　　　　Plaintiff,<br>　vs.<br><br>RANCHO DORADO HOMEOWNERS ASSOCIATION, et al.,<br><br>　　　　　　　　　　Defendants. | CASE NO. 10CV1091 DMS (WVG)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

　　　　Pending before the Court is a motion for summary judgment by Defendants Rancho Dorado Homeowners Association and Prescott Companies (herein, "Defendants"). (Doc. 56.) For the following reasons, Defendants' motion for summary judgment is denied.

**I.**

**BACKGROUND**

　　　　Plaintiff and her husband purchased a home in the Rancho Dorado community in San Marcos, California in May 2001, where they have resided with their minor children since. (First Amended Complaint ("FAC") ¶ 14.) Plaintiff alleges she suffers from various medical conditions, including Multiple Chemical Sensitivities, Mixed Connective Tissue Disease, Vasculitis, Polymyositis, Scleroderma, Lupus, Rheumatoid Arthritis, Thyroid Disease, and Asthma. (*Id.* at ¶ 15.) Plaintiff further alleges her medical conditions cause her immune system to react to exposure to various environmental chemicals or pesticides, insecticides, fungicides, fertilizers, and herbicides, making

such materials dangerous to her health and potentially life threatening. (*Id.* at ¶¶ 15, 17.) Plaintiff has informed Defendants Rancho Dorado Homeowners Association and The Prescott Companies of her special sensitivity to such materials and requested certain accommodations. (*Id.* at ¶ 18.) Despite this, Plaintiff alleges the HOA Defendants caused such materials to be applied to the common area around Plaintiff's property in 2008 and 2009, causing her bodily injury, damages, and severe emotional distress. (*Id.* at ¶¶ 19-20, 27-33, 36-38.)

On August 6, 2010, Plaintiff filed the FAC. (Doc. 18.) The FAC states seventeen claims for relief, fifteen of which are stated against Defendants Rancho Dorado Homeowners Association and The Prescott Companies. On September 13, 2010, the Defendants filed an answer to the FAC. (Doc. 35.) On October 18, 2010, Plaintiff filed a motion for a temporary restraining order ("TRO") enjoining Defendants from spraying or otherwise applying any pesticide, fungicide, fertilizer, or herbicide within a quarter mile radius of Plaintiff's residence. (Doc. 39.) On October 19, 2010, Defendants filed a response to Plaintiff's application for a TRO, stating they had "voluntarily postponed commencement of the subject pesticide application to the Rancho Dorado common areas until after the Court's hearing and ruling on plaintiff's motion for preliminary injunction." (Doc. 40.) On October 20, 2010, upon the parties' consent, the Court issued an Order construing Plaintiff's application for a TRO as a motion for a preliminary injunction and setting a briefing schedule. (Doc. 41.) After a hearing on Plaintiff's motion for a preliminary injunction, the Court denied Plaintiff's motion. (Doc. 48.)

## II.

## LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of

materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## III.

## DISCUSSION

Defendants move for summary judgment on the basis there is no "triable issue of fact that Plaintiff lacks evidence of a causal connection between Defendants' pest control measures in the Rancho Dorado common areas and Plaintiff's alleged actual or potential harm, which causal connection is an essential element of each of plaintiff's fifteen causes of action against these defendants." (MSJ at 1.) In making their motion for summary judgment, Defendants principally rely on this Court's Order denying Plaintiff's motion for a preliminary injunction. In support of that motion, Plaintiff submitted the Declarations of Everett DeLano, Dan O. Harper, M.D., Plaintiff Karan Zopatti, Vera S. Byers, M.D., Ph.D, and the Second Declarations of Dr. Harper and Plaintiff. Defendants submitted the Declarations of Thomas Oxendine and Daniel L. Sudakin, M.D. Based on the evidence before it, and in light of the stringent standard applicable to a motion for a preliminary injunction, the Court ruled "although Plaintiff has demonstrated the possibility of irreparable harm in the absence of preliminary relief, she has failed to carry her burden of establishing that such irreparable harm is in fact likely," and therefore denied Plaintiff's motion. (Nov. 1 Order at 5.) Defendants point to the Court's finding that "Plaintiff has failed to establish a likelihood of irreparable harm" and argue, in light of it, summary judgment is appropriate. (*Id.*) They do not, however, address the Court's finding that "Plaintiff has demonstrated the possibility of irreparable harm in the absence of preliminary relief." (*Id.*)

Defendants point to the Court's finding in its November 1 Order that "[a]lthough both Dr. Byers and Dr. Harper declare that exposure to the pesticides at issue will cause Plaintiff irreparable harm, their Declarations and the documents submitted with them as exhibits do not sufficiently show a causal relationship between such exposure, in whatever amounts, and a potential worsening of Plaintiff's medical condition." (*Id.*) Defendants further point to the language in the Court's Order

stating "[f]urthermore, although Plaintiff's second declaration states she has been treated by numerous doctors and specialists for her various medical conditions since 1989 and attaches multiple medical records, these records do not indicate any causal link between her condition, or the worsening of her condition, and exposure to pesticides, fungicides, or fertilizers." (*Id.* (citing Second Zoppati Decl. ¶ 3, Exs. 1-6).)

In addition to pointing to the Court's Order on Plaintiff's motion for a preliminary injunction, Defendants spend a great deal of their motion describing the various administrative proceedings initiated by Plaintiff with state and county regulatory agencies. Defendants argue the records in those proceedings, which they submit with their motion, show the true nature of the dispute between the parties: that Plaintiff found the pest control procedures used by Defendants to be environmentally unsound. Defendants further seem to argue that, because Plaintiff has previously initiated various administrative proceedings and because no such proceeding has of yet resulted in a finding of a causal relationship between Defendants' application of various chemicals and pesticides and Plaintiff's injuries, they are entitled to summary judgment in the instant action.[1] The Court is not persuaded by this reasoning.

The summary judgment standard requires the moving party to establish there is no genuine dispute as to any fact which could, under the governing substantive law, affect the outcome of the case. In their motion, without even so much as setting forth the governing standard for a summary judgment motion, Defendants argue Plaintiff's five statutory discrimination claims require a causal connection between "a defendant's conduct and a plaintiff's actual harm . . . ." (MSJ at 15.)[2] Defendants then

---

[1] In their Reply, Defendants state the pre-litigation record of administrative proceedings was intended to provide "[a]dditional factual *context*" to their motion for summary judgment. (Reply at 1 n.1.)

[2] Defendants also state in a conclusory fashion that Plaintiff's claim for violation of the Americans with Disabilities Act ("ADA") is "also subject to summary dismissal as a matter of law, since homeowner's associations are not subject to the ADA." (MSJ at 16-17 (citing *So. Cal. Hous. Rights Ctr. v. Los Feliz Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1067-68 (C.D. Cal. 2005)).) However, as Plaintiff points out, the Court in *Southern California Housing Rights Center* noted that summary judgment was proper on the ADA claim because the plaintiffs there did not claim the homeowner's association operated a place of public accommodation, as is necessary for the ADA to apply. *So. Cal. Hous. Rights Ctr.*, 426 F. Supp. 2d at 1067. In contrast, Plaintiff here does claim the homeowner's association owns various common areas which constitute public accommodations. (Opp. at 14 (citing FAC ¶ 50).) In their Reply, Defendants claim there is no need to address this issue

summarily conclude that Plaintiff bears the burden of proving through medical evidence a causal relationship between exposure to pesticides and chemicals due to Defendants' policies and her injuries in order to support each of the remaining claims she asserts against Defendants. (*Id.* at 17 ("First year law students know that a causal connection between a defendant's *wrongful* conduct and some actual harm to plaintiff is an essential element of each of these causes of action.").) In the context of discussing her claim for violation of the Fair Housing Act Amendments, Plaintiff states she "does not dispute that courts have required some showing of causation." (Opp. at 10.) Rather, Plaintiff argues she has presented more than adequate evidence to establish the causal link between Defendants' policies regarding the application of chemicals and pesticides and Plaintiff's injuries, pointing to the Declarations of Plaintiff, Dr. Harper, and Dr. Byers submitted in support of Plaintiff's opposition to Defendants' motion for summary judgment. The Court is not persuaded that Defendants have met their burden of showing, under the governing substantive law of each of Plaintiff's claims, there is no genuine dispute as to any fact that could affect the outcome of each claim. However, even accepting as true for purposes of this motion Defendants' assertion that each of Plaintiff's claims requires a showing of medical evidence of a causal link between Plaintiff's injuries and her exposure to pesticides applied at the direction of Defendants, the Court finds Defendants have not sufficiently demonstrated the absence of a genuine dispute as to the material fact of causation to warrant summary judgment.

In opposition to Defendants' motion for summary judgment, Plaintiff submitted the Declarations of Plaintiff, Dr. Harper, Dr. Byers, and M. Dare DeLano. According to the Declaration of Plaintiff, she has been diagnosed with various medical conditions which cause her to experience an immune system response when exposed to various chemicals. (Zopatti Decl. ¶¶ 2-3.) Plaintiff also declares, after being exposed to the application of pesticides in her neighborhood on March 31, 2009, she experienced stinging eyes, body aches, weakness, and fatigue, which continued to worsen until she experienced difficulty breathing, stomach pain, coughing, and a sore throat and ears. (*Id.* at ¶¶ 10-12.) Plaintiff states her condition continued to worsen and, on April 29, she had severe abdominal pain,

---

because Plaintiff has failed to offer evidence of causation and actual harm under the ADA. Accordingly, for the reasons, stated herein, Defendants have failed to meet their burden of establishing they are entitled to summary judgment as to Plaintiff's ADA claim.

vomiting, diarrhea, and blood in her stool. (*Id.* at ¶ 13.) On April 30, after going to the medical office of a gastroenterologist, Plaintiff was admitted to the emergency room, where a CAT scan revealed internal bleeding. (*Id.* at ¶¶ 14-15, Exs. 6-7.) Plaintiff also declares, within a few days of a pesticide application on June 18, 2008, she began to experience aches, prickly pain, fatigue, weakness, and a rash on her face and that her symptoms continued to worsen over the following month, causing her to visit a physician on July 16. (*Id.* at ¶¶ 17-19, Ex. 9.) Plaintiff also reports, after an application of pesticides on July 28-29, 2008 (during which time she was away on vacation) and again on August 5-6, 2008, she experienced chest pain, a usual symptom of a flare in her mixed connective tissue disease, on August 28, 2008 and again visited a physician. (*Id.* at ¶ 20, Ex. 10.) Finally, she states certain toxins were applied to the common areas around her home in early 2007 and, during such time, she often worked in her backyard and began experiencing right hand numbness and pain, body aches, chest pain, shortness of breath, and weakness. (*Id.* at ¶¶ 21-22.) Tests that were conducted at that time indicated Plaintiff suffered from reactive airway disease. (*Id.* at ¶ 22, Ex. 11.)

Dr. Harper has treated Plaintiff since August 10, 2009 and confirms her diagnoses of Multiple Chemical Sensitivities, Mixed Connective Tissue Disease, Vasculitis, Polymyositis, Scleroderma, Lupus, Rheumatoid Arthritis, Thyroid Disease, and Asthma. (Harper Decl. ¶ 3.) Dr. Harper also states "[i]n addition to a review of her medical records and my own examinations, I have performed a genetic panel test on Mrs. Zopatti which reveals detoxification pathway weaknesses. Due to her autoimmune state, exposure to pesticides and other chemicals causes her own immune system to attack her body. Her condition is such that exposure to pesticides and/or other chemicals could result [in] serious, irreversible health problems, and could even result in her death. Reliance upon the genetic panel test is common, as it is performed daily by a host of institutions and doctors to see what medications for anesthesia, chemotherapy or disease control can be used safely." (*Id.* at ¶ 4.) Dr. Harper declares "Mrs. Zopatti has had near fatal experiences induced by her pesticide and chemical exposures at her home by airborne applications and fumes released by the granules as the heat and humidity fluctuate and cause aero solation of the chemicals previously applied." (*Id.* at ¶ 8.)

In her declaration, Dr. Byers notes the health effects Plaintiff claims to have experienced in response to exposure to pesticides are "totally consistent with the symptoms a person with her medical

condition would be likely to suffer when faced with exposure to pesticides and insecticides. Often, people with autoimmune disease develop severe flares when exposed to pesticides, herbicides or toxic industrial chemicals." (Byers Decl. ¶ 11.) Dr. Byers further declares "it is consistent with a person with Mrs. Zopatti's medical condition to develop symptoms weeks, even months, after exposure to toxic agents." (*Id.* at ¶ 12.)

Defendants challenge the admissibility of this evidence. They argue Dr. Byers' Declaration is "incompetent" because she states that the only records she reviewed in connection with it were Plaintiff's Second Declaration in Support of Plaintiffs' Motion for Preliminary Injunction and Plaintiff's present Declaration in Opposition to Summary Judgment, including the exhibits to each. (Reply at 6; Byers Decl. ¶ 8 (also stating "[i]n connection with this declaration, I have reviewed pertinent medical records and other documents regarding Karan L. Zopatti's medical condition.").) Defendants then argue the Declaration of Dr. Harper is "incompetent" because he does not claim to have reviewed Plaintiff's present or prior declarations, or the exhibits to them. (Reply at 7.) Defendants further argue the expert opinions of Dr. Byers and Dr. Harper are inadmissible under Federal Rules of Evidence 701-703, *Daubert*, and *Kumho*.

The Court first looks to Plaintiff's Declaration. Defendants object to the testimony of Plaintiff in her Declaration on the basis of irrelevance, lack of foundation, and improper expert opinion. The Court finds, however, that Plaintiff's testimony is related to facts that she has personal knowledge of, as demonstrated by her own testimony. Plaintiff testifies to the application of pesticides and other chemicals in the Rancho Dorado common areas on certain dates and to her own physical condition on dates in temporal proximity to the dates of those applications. Accordingly, Plaintiff has demonstrated the existence of a triable issue of fact as to the existence of evidence of a causal connection between Defendants' pest control measures in the Rancho Dorado common areas and Plaintiff's alleged injuries, including interference with her use and enjoyment of her dwelling place. Because the Court finds the testimony of Plaintiff is sufficient to raise a triable issue of fact as to the causal relationship between Defendants' policy and Plaintiff's injuries, the Court need not address Defendants' objections to the Declarations of Dr. Harper and Dr. Byers here.

Plaintiff argues that "while the evidence presented in connection with the preliminary

injunction motion might not have been sufficient for this Court to find it necessary to enjoin the particular pesticide application planned (in the manner in which is was planned), that is a far cry from this Court finding that there are no genuine issues of material fact on all fifteen causes of action against Defendants." (Opp. at 2-3.) The Court agrees. Accordingly, Defendants have failed to demonstrate there is no genuine dispute as to any material fact and their motion for summary judgment is denied.

## IV.
## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied.

**IT IS SO ORDERED.**

DATED: March 4, 2011

HON. DANA M. SABRAW
United States District Judge